IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTIAN AQUILA,[1] and<br>MELINA DOBRIKOVIC-AQUILA<br>and CHRISTIAN AQUILA, JR., a minor<br><br>         Plaintiffs<br><br>    v.<br><br>NATIONWIDE MUTUAL<br>INSURANCE COMPANY<br><br>         Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br><br>NO. 07-2696 |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE                                                                                November    13, 2008
UNITED STATES MAGISTRATE JUDGE

**I.     Introduction**

Plaintiff Christian Aquila, Sr. ("Aquila Sr.") brought this action against Defendant Nationwide Mutual Insurance Company (alternatively "Nationwide" or "Defendant"). The complaint was filed in the United States District Court for the Eastern District of Pennsylvania and assigned to the Honorable Anita B. Brody.[2] On May 9, 2008, the parties consented to Magistrate Judge jurisdiction and the matter was transferred to this Court. (Doc. 48). Presently before the Court is Nationwide's motion (Doc. 70) pursuant to Fed. R. Civ. P. 12(b)(6), 12(e), and 12(f) to dismiss

---

[1] While in both the initial complaint and the first amended complaint the named Plaintiff is referred to as "*Christopher Aquilla*," the second amended complaint refers to him as Christian Aquila. We follow the lead of the second amended complaint.

[2] Subject matter in this case is predicated upon diversity of citizenship under 28 U.S.C. § 1332. (*See* Doc. 68 ¶ 6). Under *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938), a federal court must apply the substantive laws of its forum state in diversity actions. *See Borse v. Piece Goods Shop, Inc.*, 963 F.2d 611, 614 (3d Cir. 1992). Accordingly, we apply Pennsylvania law in deciding all substantive legal issues pertaining to this case.

or, alternatively, strike all claims asserted in the second amended complaint on behalf of Christian Aquila, Jr. ("Aquila Jr."), Aquila Sr.'s 6-year-old son. Plaintiffs have filed a timely response. (Doc. 71). We have carefully considered the papers before us and have concluded that the motion is well-taken. The claims of Aquila Jr. will be dismissed.

## II.     Factual Background[3]

On or about September 27, 2005, Aquila Sr. and his former wife, Milena Dobrikovic ("Dobrikovic"), were the owners of a 2002 Nissan Pathfinder (the "Vehicle") which had been insured by Nationwide through an insurance policy (the "Policy") which included losses by theft. On that date, the Vehicle was stolen from a street-side parking spot somewhere in Philadelphia. Aquila Sr. had been at work as a food concessionaire in the city's South Philadelphia Sports Complex[4] at the time of the theft. Upon his discovery of the missing Vehicle, Aquila Sr. promptly reported the incident to the Philadelphia Police Department and to Nationwide. Within an unspecified number of days, the police located the Vehicle. It had been seriously vandalized and burned.

Upon the subsequent discovery of the Vehicle's condition, Aquila Sr. "made a claim for replacement cost" to Nationwide (the "Claim"). The Claim was referred to Barbara Grabowski, one

---

[3] For the purposes of this motion, the Court accepts as true all factual allegations contained in the second amended complaint. *See Zimmerman v. HBO Affiliate Group*, 834 F.2d 1163, 1164-65 (3d Cir. 1987). Accordingly, all citations to specific paragraphs within this section refer the second amended complaint (Doc. 68). While the second amended complaint lacks specificity as to dates, this circumstance has not hampered our analysis.

[4] We take judicial notice of the fact that the South Philadelphia Sports Complex houses the city's professional sports teams, and incorporates the currently-named Wachovia Center, Wachovia Spectrum, Lincoln Financial Field, and Citizens Bank Park. *See* http://en.wikipedia.org/wiki/South_Philadelphia_Sports_Complex.

of Nationwide's claims-handling representatives, and to Adam Marakovits ("Marakovits"), a Nationwide claims investigator. Marakovits subsequently undertook an investigation (the "Investigation") of the incident. It is the Investigation which forms the basis of the second amended complaint.

Plaintiffs allege that over the course of the Investigation, Marakovits attempted to "manufacture a defense to the legitimate payment" of the Claim (¶ 18) and sought "to harass and to intimidate the Plaintiffs and deprive them of the value" of the Vehicle (¶ 17). They assert that Marakovits made various demeaning comments and insinuations about Aquila Sr. to him and his wife, as well as to others. Specifically, Plaintiffs allege that Marakovits accused Aquila Sr. of insurance fraud, contacted Dobrikovic's mother to assert that Aquila Sr. "was of 'shady' character," and generally implied that Aquila Sr. "had acted in such a manner as to cause the theft of [the Vehicle] for purposes of disposing of [the Vehicle] and collecting the insurance proceeds to pay off the loan on [the Vehicle]" (¶ 18). Plaintiffs also assert that Marakovits insisted that Aquila Sr. produce certain financial records including tax returns, payroll records, credit card payments, and "generally acted in such a manner as to accuse [Aquila Sr.] of acting in a criminal manner." (¶ 19).

Plaintiffs likewise assert that Marakovits, over the course of the Investigation, contacted Dobrikovic and "demanded that she produce herself for the purposes of a deposition" so as to "harass and intimidate" her and Aquila Sr. and to "cause them to abandon" the Claim. (¶ 20). They further allege that Marakovits continued to telephone her "in an effort to . . . cause dissension" between her and Aquila Sr. (¶¶ 20-21). Marakovits allegedly "thereafter made it known to others that he suspected that [Aquila Sr.] had committed a criminal act during the time period in which the vehicle had been stolen, that [Aquila Sr.] made a false claim and that [] Marakovits was convinced that he

would uncover evidence of the criminal act of [Aquila Sr.]." (¶ 24).  It is also asserted that Marakovits told Dobrikovic "that his investigation uncovered criminal and fraudulent acts committed by" Aquila Sr.  (¶ 24).

Plaintiffs assert that these actions harmed Aquila Sr.'s reputation and caused the eventual divorce between him and Dobrikovic and also, in turn, deprived Aquila Jr. of "the comfort and security afforded him by his natural parents" (Pars. 35-36).   They also assert that those actions caused them to "suffer both emotional as well as monetary loss" (Par. 44) and specifically forced them to spend several thousand dollars in attorneys fees and expend significant time and effort that they would not have otherwise had to expend but for the actions of Marakovits. (Par. 49).  Plaintiffs thus commenced this suit, and assert that by Marakovits' actions, Nationwide slandered them and breached its duty, both under the contract and in tort, to deal in good faith.

**III.    Procedural History**

By his complaint, Aquila Sr., as owner of the Vehicle insured by Nationwide, set out claims against Nationwide for libel and slander (Count One); bad faith (Count Two); and violation of 42 U.S.C. § 1983 (Count Three).  On September 4, 2007, Nationwide filed a motion to dismiss Count Three of the complaint (Doc. 3), and Judge Brody granted the motion on December 5, 2007 (Doc. 17).

Upon transfer of the matter to this Court by the consent of the parties in May 2008, counsel for Aquila Sr. filed motions seeking leave to file an amended complaint on June 8, 2008 and June 10, 2008 (Docs. 52 &53), which we granted on July 17, 2008 (Doc. 57).  Counsel then filed a first amended complaint on July 22, 2008.  (Doc. 58).   On July 30, 2008, Nationwide filed a motion pursuant to Fed.R.Civ.P. 12(e) for a more definite statement.  (Doc. 60).  Following an August 15,

2008 recorded telephone conference with the Court (Doc. 67) and discussion about the claimed deficiencies in the first amended complaint, counsel stated that he would address the deficiencies with a second amended complaint. This pleading was filed on August 20, 2008 (Doc. 68). Like the first amended complaint, it added Dobrikovic and Aquila Jr. as Plaintiffs to Count One; Dobrikovic as Plaintiff to Count Two; and set out a new Count Three asserting a "claim of bad faith damages" naming only Aquila Jr. as Plaintiff.[5] We note that based upon Plaintiffs' assertion as to Aquila Jr.'s May 27, 2002 date of birth, he was 6 years old at the time of the filing of the second amended complaint and only 3 years old at the time of the allegedly actionable conduct.

Nationwide then, on September 10, 2008, filed this motion (Doc. 70) pursuant to Fed. R. Civ. P. 12(b)(6), 12(e), and 12(f) to dismiss or, alternatively, strike all claims asserted by Aquila Jr. in the second amended complaint. Plaintiffs filed a response to the motion on September 25, 2008 (Doc. 71) to which Nationwide filed a reply on October 6, 2008 (Doc. 76). The motion is thus now ripe for our review. For the reasons set out below, we will grant Defendant's motion and dismiss all claims asserted on behalf of Aquila Jr.

**IV.    Legal Standard**

Pursuant to Fed.R.Civ.P. 12(b)(6), a defendant may move to dismiss a complaint or a claim

---

[5] Amended pleadings are governed by Fed.R.Civ.P. 15. Once a plaintiff files an amended complaint it is well settled that the amended pleading supercedes and renders moot the initial complaint. *See, e.g., Washer v. Bullitt County*, 110 U.S. 558, 562 (1884); *New Rock Asset Partners, L.P. v. Preferred Entity Advancements, Inc.*, 101 F.3d 1492, 1504 (3d. Cir. 1996) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985) and noting the "general principle that the amended complaint 'supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading'"); *Panton v. Matlack,* No. 06-0809, 2007 U.S. Dist. LEXIS 92003, *7 (M.D.Pa. Dec. 14, 2007) ("It is well-settled that an amended complaint supersedes the original complaint."). In that the second amended complaint nowhere purports to "specifically refer to or adopt" either of the prior complaints, we proceed only upon the claims raised in the second amended complaint.

within a complaint for "failure to state a claim upon which relief can be granted." A motion pursuant to Fed.R.Civ.P. 12(b)(6) "tests the legal sufficiency of [a] plaintiff's claim" *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006), and is "designed to screen out cases where a complaint states a claim based upon a wrong for which there is clearly no remedy, or a claim which the plaintiff is without right or power to assert and for which no relief could possibly be granted." *Port Auth. v. Arcadian Corp*, 189 F.3d 305, 312 (3d Cir. 1999) (quotation omitted).

A motion filed under Fed.R.Civ.P. 12(b)(6) generally requires the reviewing court to determine "whether the plaintiff would be able to prevail even if she were able to prove all of her allegations." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d. Cir. 2006). In *Bell Atlantic Corporation v. Twombly*, the Supreme Court expressly consigned for "retirement" what had previously been a well-accepted standard for review of a motion under Fed.R.Civ.P. 12(b)(6): namely, that "a complaint should not be dismissed for a failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 127 S. Ct. 1955, 1968-69 (2007). The Court held, rather, that "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (citations omitted). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965 (citations omitted).

In light of *Twombly*, the Third Circuit has explained that a complaint must demonstrate that "the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1964). In the specific context of a Fed.R.Civ.P. 12(b)(6) motion,

"stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element[s]." *Phillips*, 515 F.3d at 234 (citing *Twombly*, 127 S. Ct. at 1965).

In making this determination, the reviewing court is bound to accept as true all factual allegations contained in the complaint, *see Zimmerman*, 834 F.2d at 1164-65, and "must interpret allegations in the light most favorable to the plaintiff," *Port Auth.*, 189 F.3d at 311. The reviewing court, however, is not simply "bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 127 S. Ct. at 1965 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). In other words, a reviewing court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Hunt v. United States Tobacco Co.*, 538 F.3d 217, 227 (3d Cir. 2008) (internal quotation omitted).

## V.   Discussion

In its motion, Defendant seeks to dismiss Aquila Jr.'s claim for Libel and Slander raised in Count One of the second amended complaint, and seeks to alternatively strike or dismiss Count Three of the second amended complaint in its entirety. We address Defendant's motion as it pertains to each individual challenged count, in turn.

### A.   Count One: Libel and Slander

Plaintiffs, including Aquila Jr., have asserted claims for libel and slander in Count One of the second amended complaint. The elements of a claim for defamation are well-settled. Aquila Jr. must establish:

> (1) The defamatory character of the communication.
> (2) Its publication by the defendant.
> (3) Its application to the plaintiff.
> (4) The understanding by the recipient of its defamatory meaning.
> (5) The understanding by the recipient of it as intended to be applied

>       to the plaintiff.
>       (6) Special harm resulting to the plaintiff from its publication.
>       (7) Abuse of any conditional privilege.

42 Pa. C. S. § 8343(a); *see also Beverly Enters. v. Trump*, 182 F.3d 183, 187 (3d Cir. 1999). At the stage of a Fed.R.Civ.P. 12(b)(6) motion, a plaintiff is thus required to provide within his complaint "enough factual matter (taken as true) to suggest the required element[s]." *Phillips*, 515 F.3d at 234. Nationwide asserts that Aquila Jr. has failed to articulate any facts to suggest the existence of elements three and five – that the allegedly defamatory statements applied to him and that any recipients of the alleged statements understood that the statements were intended to apply to him. Nationwide is right. This claim will be dismissed.

Plaintiffs have alleged that Nationwide defamed them when Marakovits, among other things, referred to Aquila Sr. as "shady," and implied that he had engaged in criminal activity. (*See supra* at 3-4). Plaintiffs have not, however, asserted that these allegedly defamatory statements applied to Aquila Jr. In fact, Plaintiffs have acknowledged that "the demeaning language [was] directed toward the parent . . . ." (Doc. 71 at 3).[6] Likewise, there is no allegation that any recipient of the allegedly defamatory statements did or would have understood that they applied to Aquila Jr.

Aquila Jr. has failed assert the necessary factual matter to meet the requisite elements to establish a defamation claim. He has thus failed to state a claim upon which relief could be granted. *See Phillips*, 515 F.3d at 234. His claim within Count One will be dismissed.

> **B.    Count Three: "Claim of Bad Faith Damages to the Minor Plaintiff"**

Aquila Jr. has asserted under Count Three of the second amended complaint a "claim of bad

---

[6] In asserting, instead, that "such language may be detrimental to the reputation of the son," Plaintiffs appear to focus exclusively upon establishing the harm element of a defamation cause of action. This is insufficient.

faith damages." Nationwide asserts that this count, in which Aquila Jr. is the only named Plaintiff, is best described as "a nebulous and undefined cause of action" which is so ambiguous that it fails to provide a definite statement as to the precise nature of the claim asserted. (Doc. 69 at 4-7). Nationwide further asserts that because Plaintiff was given a chance by this Court "to cure the ambiguities" contained in the first amended complaint and has failed to do so, we should strike the count in its entirety pursuant to Fed.R.Civ.P. 12(e). (Doc. 69 at 5-6). Alternatively, Nationwide argues that the numerous theoretical claims which Plaintiff could arguably be construed to raise by the count should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) due to a failure to state a claim upon which Plaintiff could be entitled to relief. While we understand Nationwide's basis for dismissal under Fed.R.Civ.P. 12(e), we will address this motion under Fed.R.Civ.P. 12(b)(6) in that we believe that the claims as to Aquila Jr. are tenuous in the extreme under any possible legal theory that might be extracted from Plaintiffs' papers. We also find that none state a claim upon which Aquila Jr. could be entitled to relief.

    **1.  Violation of Plaintiff's Civil Rights Pursuant to 42 U.S.C. § 1983**

In Paragraphs 36 and 37 of the response, Plaintiffs admit that they are attempting to assert within Count Three a claim alleging a violation of Aquila Jr.'s civil rights pursuant to 42 U.S.C. § 1983. Nationwide correctly points out (*see* Doc. 69 at 7) that this claim asserts the same cause of action as Count Three of the original complaint, which had asserted a violation of Aquila Sr.'s civil rights pursuant to § 1983 claim based upon the same set of operative facts. This claim was dismissed by Judge Brody in her Order of December 5, 2007. (Doc. 17). It is thus the law of the

case,[7] and we decline to accept Plaintiff's invitation to revisit the issue of whether this § 1983 could somehow be viable under the facts of this case merely because Plaintiffs have inserted a new claimant into the cause of action. We apply Judge Brody's ruling to this claim, and to the extent that Count Three asserts a claim alleging a violation of Aquila Jr.'s civil rights pursuant to 42 U.S.C. § 1983, it will be dismissed.[8]

### 2. Intentional or Negligent Infliction of Emotional Distress

Nationwide asserts that Count Three fails to properly state a claim for intentional or negligent infliction of emotional distress. (*See* Doc. 69 at 7-8). In the response, however, Aquila Jr. clarifies that he does not to assert such a claim. He, rather, explains that in fact this "claim is a derivative claim based upon the good faith dealing owed to the insureds [sic]" by Nationwide. (Doc. 71 at 8, ¶ 39). As Plaintiffs have disavowed this theory, we need not examine further whether such a claim could survive a motion to dismiss.[9]

---

[7] The law of the case doctrine "directs courts not to reopen or re-decide legal issues that were resolved earlier in the litigation." *United States v. Union Corp.*, Civ. A. No. 80-1589, 2000 U.S. Dist. LEXIS 8076, *54-55 (E.D. Pa. June 13, 2000) (citing *Agostini v. Felton*, 521 U.S. 203, 236 (1997).

[8] While we do not have the benefit of the reasons Judge Brody articulated for dismissing this claim, it is clear to us that the claim was unsupportable as Aquila Sr. failed to articulate any state action sufficient to survive a Fed.R.Civ.P. 12(b)(6) motion. Aquila Jr. similarly failed to articulate such state action.

[9] We nonetheless observe that the second amended complaint fails to set out the "critical element for establishing such liability[, which] is the contemporaneous observance of the injury to the close relative." *Brooks v. Decker*, 516 A.2d 1380, 1383 (Pa. 1986) (citation omitted). Following the Restatement (Second) of Torts § 46(2), a plaintiff would have to assert that the defendant, by "extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another" and, in turn, "intentionally or recklessly cause[d] severe emotional distress (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or (b) to any other person who is present at the time, if

(continued...)

### 3. Breach of Pennsylvania's Bad Faith Statute, 42 Pa.C.S. § 8371

Nationwide asserts that Count Three fails to properly state a claim for a violation of Pennsylvania's Bad Faith Statute, 42 Pa.C.S. § 8371 (*see* Doc. 69 at 8).[10] By his denial of Nationwide's assertion, we construe Aquila Jr. as attempting to assert a claim pursuant to § 8371.

As a threshold matter, an action seeking remedies pursuant to § 8371 "applies only in limited circumstances--i.e., where the insured first has filed 'an action arising under an insurance policy' against his insurer." *Ash v. Cont'l Ins. Co.*, 932 A.2d 877, 882 (Pa. 2007). The statute "only permits [this] narrow class of plaintiffs to pursue the bad faith claim against a narrow class of defendants." *Id.* Specifically, a § 8371 claim presupposes the existence of "a claim an insured has made of his insurer," *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 200 (Pa. 2007), and thus only the "insured" engaged in the bringing of a claim against his insurer has the standing necessary to bring a § 8371 claim. *See Polselli v. Nationwide Mut. Fire Ins. Co.*, 126 F.3d 524, 530 (3d Cir. 1997) (determining that "[a]bsent a predicate action to enforce some right under an insurance policy, an insured may not

---

[9](...continued)
such distress results in bodily harm." *Taylor v. Albert Einstein Med. Ctr.*, 754 A.2d 650, 652 (Pa. 2000). The second amended complaint fails to set out the necessary elements.

[10] The bad faith statute provides:

§ 8371. Actions on insurance policies

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

sue an insurer for bad faith conduct in the abstract."). In other words, in order to fit into the "narrow class of plaintiffs" permitted to bring a claim pursuant to § 8371, a plaintiff must, first, qualify as an "insured" under an insurance policy and, second, have actually made a claim "of his insurer." *Toy*, 928 A.2d at 200.

Aquila Jr.'s assertion that he is deemed an "insured" under the Policy (*see, e.g.*, Doc. 71 at 9, ¶¶ 40 & 43) does not in and of itself – especially under the circumstances of this case – render him part of the "narrow class of plaintiffs" able to bring a § 8371 claim. *See Ash*, 932 A.2d at 882. Mere entitlement to protection under the insurance policy is insufficient to properly confer standing to bring a § 8371 claim. *See Toy*, 928 A.2d at 200; *Polselli*, 126 F.3d at 530. Aquila Jr., rather, must show that he made a claim against Nationwide under the Policy. *See Toy*, 928 A.2d at 200. This he fails to do.[11] Accordingly, he does not fit within the "narrow class of plaintiffs" permitted to bring a § 8371 claim. *Ash*, 932 A.2d at 882. To the extent that he attempts to bring such a claim under Count Three, it will be dismissed.[12]

---

[11] Aquila Jr., although he concedes that he did not make a claim himself, appears to assert that "his parents [made] a claim for him." (Doc. 71 at 9, ¶ 40). The second amended complaint belies this assertion however, by making clear that the claim made of Nationwide was, in fact, "a claim for replacement cost [sic] of said vehicle" (Doc. 68 at 4, ¶ 13) – a vehicle which had been stolen and which had been owned by Aquila Sr. and Dobrikovic, and not by Aquila Jr. (a 3 year old child at the time). It tortures logic to say that the claim made of Nationwide for the cost of a stolen vehicle was somehow made on Aquila Jr.'s behalf, and Aquila Jr. provides no support for his assertion to the contrary. Nor does he provide support for his assertion that he someday could, somehow, make such a claim.

[12] We likewise doubt that Aquila Jr.'s bare assertion in the response to this motion that he is in fact an "insured" under the Policy (*see, e.g.*, Doc. 71 at pg. 9, ¶¶ 40, 42; pg. 11, ¶ 45) can withstand greater scrutiny. While a copy of the Policy was neither attached to the second amended complaint (or either of the prior two versions) nor Nationwide's present motion, it was attached to Nationwide's motion seeking summary judgment upon the claims made by Aquila Sr. and Dobrikovic. (*See* Doc. 75 at Ex. 9). Plaintiffs did not challenge the authenticity of that

(continued...)

### 4. Common Law Breach of Contract

Nationwide next asserts that the second amended complaint fails to properly state a claim for a common law breach of contract action.[13] (Doc. 69 at 8). We are satisfied from the face of the second amended complaint that Aquila Jr. is indeed attempting to raise such a claim.

Under Pennsylvania law, "[t]hree elements are necessary to plead properly a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." *J. F. Walker Co. Inc. v. Excalibur Oil Group, Inc.*, 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002). It is axiomatic, however, that as a general matter "a party to a contract does not become liable for a breach thereof to one who is not a party thereto." *Evans v. Otis Elevator Co.*, 168 A.2d 573, 575 (Pa. 1961). Accordingly, where a plaintiff fails to assert that he was a party to a contract, he is unable to state a direct cause of action for a breach of contract.

Nowhere in the second amended complaint does Aquila Jr. assert that he was, in fact, a party

---

[12](...continued)
document. We are satisfied that the Policy constitutes a "document[] incorporated into the complaint by reference" *see Winer Family Trust v. Queen*, 503 F.3d 319, 327 (3d Cir. 2007) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007)), and is thus properly part of the record before us in our consideration of this motion.

The Policy defines an "INSURED" as "one who is described as entitled to protection under each coverage." (*See* Doc. 75 at Ex. 9, pg. D1). Upon examination of the Policy itself, we are unable to see how Aquila Jr. could plausibly argue that he was "entitled to protection," and thus qualified as an "insured," under the "Physical Damage" Policy coverage section which explicitly extends only to damage to (and theft of) the Vehicle. (*See* Doc. 75 at Ex. 9, pp. D1-D2, P1-P6).

[13] In addition to a bad faith claim pursuant to § 8371, Pennsylvania law allows a plaintiff insured to bring a common law contract action against an insurer for a breach of the general "obligation to act in good faith" inherent in every contract. *The Birth Center v. The St. Paul Cos.*, 787 A.2d 376, 385 (Pa. 2001).

to the contract. Indeed, he concedes that Aquila Sr. and Dobrikovic were the owners of the Vehicle insured by Nationwide (*see* Doc. 68 at 3, ¶ 7) and that, in fact, Nationwide's contractual obligation was "owed to both parents of Christian Aquila [sic], Jr." (Doc. 68 at 17, ¶ 54). To the extent that Aquila Jr. attempts to bring by Count Three a direct breach of contract claim against Nationwide, he thus fails to state a cause of action upon which relief could be granted. The claim will be dismissed.

### 5. Common Law Tort Bad Faith Claim

Nationwide next asserts that Aquila Jr. fails to properly state a claim for a common law tort claim for a bad faith failure to perform a contract. (Doc. 69 at 8). As the Pennsylvania Supreme Court has recently reiterated, *see Mishoe v. Erie Ins. Co.*, 824 A.2d 1153, 1160 (Pa. 2003), the issue of whether Pennsylvania law allows "a common law tort cause of action for bad faith on the part of an insurer" was long ago laid to rest when the court decided in *D'Ambrosio v. Pennsylvania Nat'l Mut. Casualty Ins. Co.*, 431 A.2d 966 (Pa. 1981), that it did not. To the extent that Aquila Jr. attempts to bring by Count Three such a tort claim, he fails to state a cause of action upon which relief could be granted. That claim will also be dismissed.

### 6. Breach of Contract: Aquila Jr. as Third Party Beneficiary

Nationwide finally asserts that Aquila Jr. fails to properly state a claim for a third party beneficiary breach of contract claim. (Doc. 69 at 9-10). We are satisfied from the face of the second amended complaint that Aquila Jr. is indeed attempting to raise such a claim. A party asserting a breach of contract as a third party beneficiary has two avenues by which to proceed: under an express third party beneficiary theory and as an intended/implied third party beneficiary theory. We address each in turn.

### a. Express Third Party Beneficiary

Pennsylvania law provides that a party asserting a breach of contract under an express third party beneficiary theory must demonstrate that "both contracting parties [] have expressed an intention that the third-party be a beneficiary, and that [the] intention . . . affirmatively appeared in the contract itself." *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 168 (3d Cir. 2008) (quoting *Scarpitti v. Weborg*, 609 A.2d 147, 149 (Pa. 1992)). Aquila Jr. fails on both counts – he fails to plead that both Aquila Sr. and Dobrikovic on the one hand and Nationwide on the other expressed any intention that Aquila Jr. be a beneficiary to the Policy to the extent that it covered loss by theft, and certainly fails to assert that any such intention "affirmatively appeared in the contract itself." *Sovereign Bank*, 533 F.3d at 168. Although he indeed asserts in his second amended complaint that he "is a third party beneficiary to the contract of insurance issued by the Defendant and therefore is owed a duty of care consistent with the law related to 'bad faith' actions by an insurance carrier" (Doc. 68 at 20, ¶ 60), this lone assertion is nothing more that "a legal conclusion couched as a factual allegation." *Twombly*, 127 S. Ct. at 1965. As such, it is insufficient to provide a basis for Aquila Jr. to survive this Fed.R.Civ.P. 12(b)(6) motion. The claim will be dismissed.

### b. Intended Third Party Beneficiary

In *Scarpitti*, the Pennsylvania Supreme Court adopted § 302 of the Restatement (Second) of Contracts, which provides in pertinent part:

> (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intentions of the parties and either
>
> (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

15

>   (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

609 A.2d at 150.

Aquila Jr. fails to plead any of these elements. Specifically, he fails to plead that he was owed "a right to performance" in a claim made against Nationwide for the theft of the Vehicle which, as Plaintiffs clarify, was "a claim for replacement cost [sic] of said vehicle." (Doc. 68 at 4, ¶ 13). He likewise fails to plead that such performance was somehow "appropriate to effectuate the intentions of the parties." *Scarpitti*, 609 A.2d at 150. Nor does he assert that Nationwide's performance of the vehicle-theft replacement cost claim could somehow "satisfy an obligation of" Aquila Sr. and Dobrikovic to pay money to Aquila Jr. or that any circumstances indicated that Aquila Sr. and Dobrikovic intended to give Aquila Jr., a then-3 year old child, the benefit of the promised performance, which here would be the replacement cost of the Vehicle. *Id.* As we concluded above, his bare assertion that he is a third party beneficiary is unsupported and is nothing more than a legal conclusion. *Twombly*, 127 S. Ct. at 1965. It fails to provide a basis for Aquila Jr. to survive this Fed.R.Civ.P. 12(b)(6) motion. The claim will be dismissed.

An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHRISTIAN AQUILA, and | : | CIVIL ACTION |
| MELINA DOBRIKOVIC-AQUILA | : | |
| and CHRISTIAN AQUILA, JR., a minor | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | NO. 07-2696 |
| | : | |
| NATIONWIDE MUTUAL | : | |
| INSURANCE COMPANY | : | |
| | : | |
| Defendant. | : | |

## ORDER

AND NOW, this    13th    day of November, 2008, upon consideration of Defendant Nationwide Mutual Insurance Company's "Motion Pursuant to F.R.C.P. 12(b)(6), 12(e) and 12(f) to Dismiss and/or Strike All Claims Made by Plaintiff Christian Aquila, Jr. Including Count Three in its Entirety" dated September 10, 2008 (Doc. 70) and Plaintiffs' response and errata sheet thereto (Docs. 71 & 72), and for the reasons set out in the accompanying memorandum, **IT IS HEREBY ORDERED THAT** the motion pursuant to Fed.R.Civ.P. 12(b)(6) is **GRANTED**. All claims asserted by Christian Aquila Jr. in the second amended complaint are **HEREBY DISMISSED**. Nationwide's motion pursuant to Fed.R.Civ.P. 12(e) and 12(f) is **DENIED AS MOOT**.

BY THE COURT:

  /s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE